UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
Civil Action No. 1:12CV-84-M

NAOMI ECKHARDT                                                                                    Plaintiff

-vs-

WESTERN KENTUCKY UNIVERSITY                                                   Defendant

## AMENDED VERIFIED COMPLAINT AND REQUEST FOR JURY TRIAL

The Plaintiff, Naomi Eckhardt (hereinafter referred to as the Plaintiff), by counsel, for her Amended Verified Complaint against the Defendant, Western Kentucky University (hereinafter "WKU"), hereby states as follows:

### I. GENERAL ALLEGATIONS

1. The Plaintiff is a resident of South Carolina.

2. The Defendant, Western Kentucky University, is a state university, and its agent for service of process is the Attorney General of the Commonwealth of Kentucky, pursuant to CR 4.04(6).

3. The United States Department of Justice issued a Right to Sue on April 27, 2012, which is attached to this Amended Verified Complaint.

4. Craig Cobane, was the Plaintiff's supervisor at all times relevant to this Amended Verified Complaint.

5. Plaintiff applied for the job of Director of the Office of Scholar Development at Western Kentucky University in November 2007. Her decision to leave the University Honor's College at the University of Pittsburgh was based

upon explicit promises made to her by Cobane, then the Director of the Honor's College at WKU.

6. The Plaintiff was promised by Cobane, that she would be in control of an independent office. However, ultimately a male, Clay Motley, was hired as the Assistant Director of the Honors College and he was considered to be above the Plaintiff in the hierarchy. The Plaintiff was given a small interior office and Motley was given the largest office in the Honors College, other than Cobane's office. This male, Motley, was also given bookcases and filing cabinets while the Plaintiff was told to find these items at the university's salvage and surplus. Plaintiff addressed this issue on numerous occasions with Cobane but he did not take any action to correct this employment condition. There was an ongoing issue with the fact that Plaintiff was promised to have a staff assistant. She was eventually given 50% of an office assistant/associate's time.

7. During the time that the Plaintiff was employed, Cobane on a regular basis, subjected the Plaintiff to listening to his sexual exploits and expected her to help him utilize his office in order to increase his sexual relationships with women. The Plaintiff felt pressured to listen and to go along with this so that she would be "one of the guys" and not receive more hostile treatment from the staff and so that she would not be retaliated against by WKU.

8. Cobane continued to objectify women and discuss his sex life in front of the Plaintiff and others. During a trip to China with Cobane through the Honors College/Office of Scholar Development, he commented on the physical appearance of nearly every woman they encountered. He tirelessly attempted to have the Plaintiff and others set him up with Chinese women.

9. Cobane was anxious to visit notable Chinese monuments such as Tiananmen Square so that he could post pictures of himself at the monument on his eHarmony dating webpage.

10. Cobane told the Plaintiff that he preferred she not tell anyone that he uses his work Blackberry and data plan to facilitate his dating life.

11. Cobane also planned recruiting trips to high schools in Kentucky, Missouri, Indiana and Illinois based upon scheduling his eHarmony dates in relevant cities. If his date canceled, then his trip would be canceled as well.

12. Plaintiff states that the office culturally encouraged and tolerated a sexist bias against women.

13. In January 2011, due in part to the disparate discriminatory treatment based upon her gender that the Plaintiff was experiencing, she stopped having contact with Cobane other than work related activities. Thereafter, she was subjected to retaliatory treatment that impacted her work environment, professional reviews and professional reputation.

14. From the onset of the Plaintiff's employment she entered into a hostile and sexist work environment created or perpetuated by Cobane, which was known or should have been known by his supervisors and allowed to continue.

15. The Plaintiff's pay at WKU was exactly the same as her salary at the University of Pittsburgh. Cobane had promised her that WKU gave pay raises. He repeatedly told the Plaintiff that if she was able to be successful that she would be rewarded. Plaintiff was not given a salary raise; however, in January 2010, she was given a stipend in lieu of a raise. Cobane told the Plaintiff that the

stipend would be for three (3) years. In January 2011 the stipend was ended with the explanation from Cobane that he could not locate the documentation and couldn't/wouldn't be able to continue the stipend.

16. Up until the Plaintiff's annual performance appraisal on February 21, 2011, she received exceptional evaluations. The appraisal the Plaintiff received on February 21, 2011, outlined several things that she was required to do by May 31, 2011. Plaintiff filed a statement questioning the fairness of the review. Cobane responded by saying it was a good review and he thought it was on the high end of acceptable. On April 1, 2011, the Plaintiff was terminated in a letter, which is attached, signed by Craig Cobane.

17. The Plaintiff states that the termination was retaliatory and a proximate cause of her complaints as to disparate gender discrimination, hostile treatment directed towards her based upon her gender, and the working conditions.

## CAUSES OF ACTION

### I. VIOLATION OF TITLE VII

**Disparate gender discrimination, sexual harassment, hostile treatment and retaliation**

18. The Plaintiff herein, reiterates and reaffirms allegations contained in Paragraphs 1 through 17.

19. The Plaintiff states that the Defendant has violated federal Title VII, the Civil Rights Act of 1964, as amended, (42 U.S.C. 2000e et seq.) and has retaliated against the Plaintiff on a continuous basis in response to her complaints of gender discrimination.

20. Plaintiff states that the Defendant treated males more favorably than the female employees in terms of conditions of employment, including pay, benefits, perks and job duties assigned to the Plaintiff, and allowed a work environment culture to become status quo which does not respect women employees as persons or their contribution to the University the same as the male employees.

21. As a proximate result, the Plaintiff has suffered damages based upon this disparate gender discrimination, harassment and retaliation.

II. **VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT**

22. The Plaintiff hereby, reiterates and reaffirms all allegations contained in Paragraphs 1 through 21.

23. The Plaintiff hereby states that the Defendant's treatment towards the Plaintiff consisted of sexual harassment, gender discrimination, and retaliatory behavior violated KRS 344.040 as it deprived or adversely affected her status as an employee because of her sex.

24. The Plaintiff furthermore states that the Defendant has violated KRS 344.145 because she was denied, because of her sex, full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a facility which is supported directly or indirectly by government funds.

25. As a proximate result of which the Plaintiff has suffered damages.

WHEREFORE, the Plaintiff would request the following:

1. Trial by jury;

2. Compensatory damages, including for past and future lost wages, impairment of the Plaintiff's ability to earn money, compensation for damages to reputation, loss of earning capacity, shame, humiliation and emotional distress, in the amount of $350,000.00;

3. Punitive damages in the amount of $500,000.00;

4. Attorneys' fees and court costs;

5. Any and all other relief to which the Plaintiff is entitled under law or equity.

DATED this 13th day of June, 2012.

s/ PAMELA C. BRATCHER
_____
Pamela C. Bratcher
558 E. Tenth, Suite A
P. O. Box 130
Bowling Green, Kentucky 42102
Tel:  270/783-8311
Fax: 270/783-8522

## VERIFICATION

This is to verify that I have read the foregoing statements contained in the Verified Complaint and that they are true and correct to the best of my knowledge and belief.

NAOMI ECKHARDT

STATE OF South Carolina )
                         :ss
COUNTY OF Greenville    )

SUBSCRIBED AND SWORN TO before me this 6th day of June, 2012, by Naomi Eckhardt.

My Commission Expires: 12/9/19

NOTARY PUBLIC

[Notary seal: ALAN BO FOSTER, NOTARY PUBLIC, MY COMMISSION EXPIRES 12/9/2019, SOUTH CAROLINA]